TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES[1] a/k/a Liberty County Child Protective Services, Appellant,

v.

Rachel ATWOOD and Jonathan Oliver Atwood, Sr., Individually and on Behalf of the Estate of Jonathan Oliver Atwood, Jr., Chance Atwood, a Minor and Christopher Atwood, a Minor, Appellees.

No. 01–02–01108–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 9, 2004.

Rehearing Overruled Jan. 24, 2005.

---

**1.** "A reference in law to the Department of Protective and Regulatory Services means the Department of Family and Protective Ser-vices." Act of June 1, 2003, 78th Leg., R.S., § 1.27, 2003 Tex. Gen. Laws 611, 641.

Bridget L. McKinley and Ryan D. Clinton, Asst. Attys. Gen., Austin, TX, for Appellant.

Jan Woodward Fox, Ron S. Rainey, and Stephen V. Buttram, Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

The Texas Department of Family and Protective Services a/k/a Liberty County Child Protective Services [2] (DFPS), appellant, appeals the trial court's order denying its plea to the jurisdiction, motion to dismiss, motion for summary judgment, and motion to sever, in favor of appellees, Rachel Atwood and Jonathan Oliver Atwood, Sr., individually and on behalf of the estate of Jonathan Oliver Atwood, Jr., Chance Atwood, a minor, and Christopher Atwood, a minor. Specifically, DFPS challenges the trial court's denial of its plea to the jurisdiction, contending that sovereign immunity bars the Atwood's claims against DFPS. We agree and, thus, reverse and render judgment dismissing the Atwoods' suit against DFPS for want of jurisdiction.

## Background

### Facts

On July 14, 1999, DFPS removed three-year-old Jonathan Atwood, Jr., two-year-old Chance Atwood, and one-year-old Christopher Atwood from their mother's care, for reasons including physical and medical neglect, and the proximity of two sexual predators in the family. DFPS placed the children in the care of licensed foster parents, Dolan E. and Linda Roe, in Liberty County.

On July 19, 1999, a DFPS case worker, Linda Jayne, visited the Roe home to evaluate the Atwood children. Jayne noticed an above-ground swimming pool accessed directly by a deck in the Roe's backyard. Concerned that the children might access the swimming pool outside the supervision of the Roes, Jayne urged Mrs. Roe to construct a locking-gate to prevent the children from accessing the pool alone. Additionally, Jayne informed Mrs. Roe that it was the policy of Region 6 of DFPS to require a locked gate to block swimming pool access. Mrs. Roe informed Jayne that 1) there was a motion sensor and alarm on the back doors, 2) that the back doors had two locks, including a deadbolt; 3) she blocked access to the pool with deck furniture; and 4) the children were never outside without her.

Mrs. Roe agreed to install a gate, assuring Jayne that Mr. Roe would construct a permanent locking-gate that evening, in order to prevent pool access. Mrs. Roe informed Jayne that, once the gate was completed, she would contact Jayne in order for Jayne to verify that the work had been done.

On July 30, 1999, Mrs. Roe found Jonathan lying at the bottom of the pool. Emergency workers were unable to revive Jonathan, who was pronounced dead after arriving at the hospital. In August 1999, DFPS began an investigation into the drowning of Jonathan Atwood.[3] The agen-

---

**2.** The Atwoods filed suit against Texas Department of Family and Protective Services a/k/a Liberty County Child Protective Services (LCCPS) (together hereinafter DFPS), Harris County Child Protective Services (HCCPS), and Dolan and Linda Roe (the Roes). HCCPS did not file notice of appeal for and is not a party to this appeal. The Roes are not a

party to this appeal. The trial court entered a default judgment against the Roes on November 5, 2001.

**3.** The DFPS agency responsible for investigating allegations of abuse and neglect by regulated childcare facilities, Residential Child

cy concluded that there was "[r]eason to [b]elieve that Linda Roe is a perpetrator of neglectful supervision in the death of Jonathan Atwood." In addition, the agency determined that DFPS failed to comply with minimum standards because "[t]he agency did not ensure that Jonathan's rights were protected while he was in the Roe foster home which resulted in his death.... The agency did not ensure that Dolan and Linda Roe adequately supervised Jonathan A. [sic] and the child was able to gain access to the pool which ultimately led to his drowning."

### Procedural History

On March 15, 2001, the Atwoods filed their original petition against the Roes; Harris County Child Protective Services [4] (HCCPS); and Texas Department of Protective and Regulatory Service and Liberty County Child Protective Services (LCCPS) (together DFPS). The Atwoods claimed: (1) use and misuse of personal property, (2) premises defect, (3) negligent supervision, (4) joint enterprise, and (5) joint venture.[5]

The Atwoods assert that, at the time of the incident, the Roes were "acting within the course and scope of their designated responsibilities, enterprise or employment, or as an agent or independent contractor under the control of [DFPS]." Additionally, the Atwoods assert that, at the time of the incident, DFPS, along with the Roes, were the possessors of the property in that they exercised control over the Roe home and "had the power or authority to manage, direct, restrict, superintend, regulate, govern, administer or oversee the Roe home."

Additionally, the Atwoods assert that DFPS waived sovereign immunity from the underlying claims because those claims involved personal injury and death caused by (1) a condition and/or use of personal property and/or defective personal property,[6] and (2) a condition and/or use of real property.[7] The Atwoods further contend that the condition and/or use of the personal and real property and the negligent supervision by DFPS is such that, under Texas law, a private person would be liable.

On November 5, 2001, the trial court signed a default judgment against the Roes.[8] DFPS filed special exceptions to the Atwood's pleadings, which the trial court denied on May 13, 2002. DFPS then filed a combined plea to the jurisdiction, motion to dismiss, motion for summary

---

Care Licensing (RCCL), conducted the investigation.

4. In their original petition, the Atwoods indicated that HCCPS is the regional headquarters for region six of DFPS, and, that HCCPS approved the Roe foster home. Neither HCCPS nor the Roes are a party to this appeal.

5. The Atwoods alleged that DFPS, HCCPS, and the Roes, proximately caused Jonathan's death and the injuries sustained by the Atwoods. Specifically, the Atwood's petition alleged 1) negligence by the use and misuse of personal property and/or defective personal property, and the failure to provide an integral safety component; 2) a premise defect, namely, the deck that attached to the back of

the Roe home, extended to the pool, and, provided open access to the pool; 3) negligent supervision; 4) joint enterprise; and 5) joint venture.

6. Namely, the above-ground swimming pool, the deck, the deck furniture, the door locks, the failure to use a gate to block access to the swimming pool and/or deck, the motion detector and the failure to provide all integral safety components caused or contributed to Jonathan's death.

7. Namely, the deck attached to the back of the Roe home, which provided open access to the pool caused or contributed to Jonathan's death.

8. The Roes are not a party to this appeal.

judgment, and motion to sever based on sovereign immunity, which the trial court denied on October 9, 2002.

In its appeal, DFPS asserts that the trial court lacks jurisdiction over the Atwood's claims against it based on both the Roes' conduct and DFPS's own conduct, because the claims are barred by sovereign and governmental immunity.

## PLEA TO THE JURISDICTION

### Standard of Review

■ Whether a trial court has subject-matter jurisdiction is a question of law and is reviewed de novo. *Texas Dep't of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004); *Dep't of Protective and Regulatory Servs. v. Schutz,* 101 S.W.3d 512, 517 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The Texas Supreme Court recently held that

[a]ppellate courts reviewing a challenge to the trial court's subject matter jurisdiction review the trial court's ruling de novo. When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.

*Miranda,* 133 S.W.3d at 226–28 (citations omitted).

### Waiver of Immunity Under The Texas Tort Claims Act

The issue for this Court is whether the trial pleadings of the Atwoods invoke the waiver of governmental immunity under sections 101.021–.022 of the Texas Tort Claims Act (the Act). TEX. CIV. PRAC. & REM.CODE ANN. § 101.021–.022 (Vernon 1997). Generally, the State, its agencies,

and subdivisions, enjoy sovereign immunity from tort liability unless immunity has been waived. TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(A–B) (Vernon Supp. 2004–2005), § 101.025 (Vernon 1997); *County of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002). The Act expressly waives sovereign immunity in three general areas: 1) injury caused by an employee's use of a motor-driven vehicle, 2) injury caused by a condition or use of tangible personal or real property, and 3) injury caused by premise defect. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021–101.022(a); *Brown,* 80 S.W.3d at 554. The Act does not, however, waive immunity for discretionary decisions. TEX. CIV. PRAC. & REM. CODE ANN. § 101.056 (Vernon 1997).

The Act defines a "governmental unit," in pertinent part, as "this state and all of the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, [and] councils." TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(A); *see also id.* § 101.001(3)(B–D) (continuing definition of governmental unit under the Act).

The Act defines an "employee" as:

a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of the independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

*Id.* § 101.001(2).

In this case, it is undisputed that DFPS is a "governmental unit" as defined by the Act. None of the underlying claims is based on the use of a motor-driven vehicle by a DFPS employee. Thus, we consider whether the Atwood's pleadings and juris-

dictional evidence are sufficient to maintain either a premise defect claim or a claim for injury arising out of conditions or use of property within the Act's immunity waiver. *Id.* §§ 101.022(a), 101.021(2); *Brown,* 80 S.W.3d at 554–55.

■ The Atwoods first allege that the Roes breached a duty to properly supervise minors placed in their care, and that DFPS and HCCPS breached a duty to supervise the Roe foster home and the Atwood children. In this connection, the real substance of the Atwood's claim is that Jonathan's death was caused, not by the condition or use of property, but by 1) the failure of the Roe foster family to properly supervise three-year-old Jonathan when a person of ordinary intelligence would anticipate that the unprotected above-ground pool in the foster home's backyard posed a risk of injury to him, and 2) the failure of DFPS to properly protect Jonathan by either ensuring that the Roes adequately supervised Jonathan, or, by removing him from the Roe foster home when it became aware that a potentially dangerous condition existed on the property. *See Dallas County Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339, 343 (Tex.1998); *see also Lukasik v. San Antonio Blue Haven Pools, Inc.,* 21 S.W.3d 394, 404 (Tex.App.-San Antonio 2000, no pet.) (person of ordinary intelligence would anticipate that unprotected pool poses risk of injury to toddlers). Where the allegation stems from negligent judgment or human error rather than a use or misuse of property, the pleadings fail to satisfy the limited waiver of immunity contained within the Act. *City of Houston v. Rushing,* 7 S.W.3d 909, 915 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd) (referencing TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2)).

■ Accordingly, Atwood's claims of negligent supervision by DFPS are not actionable against DFPS because negligent supervision claims do not constitute a premise defect or the condition or use of property claim. and thus, the Act does not waive sovereign immunity for such claims. *See Texas Dep't of Public Safety v. Petta,* 44 S.W.3d 575, 581 (Tex.2001). We now turn to whether a waiver of immunity exists for the Atwood's claims alleging negligence resulting from a condition or use of tangible personal property.

*1. Waiver of Immunity Based on Condition or Use of Tangible Personal or Real Property*

In the underlying case, the Atwoods alleged that

[a]t the time of the incident made the basis of the present litigation, [DFPS] and HCCPS' use and misuse of personal property and/or use or misuse of defective personal property, including, but not limited to the above-ground swimming pool, the deck, the deck furniture, the door locks, the failure to use a gate blocking access to the above-ground swimming pool and/or deck, and the motion detector was negligent and lacked an integral safety component. Specifically, [DFPS] HCCPS and their employees, including, but not limited to, Jennifer Dalby, Adele Hiller, Linda Jayne, Gertha Williams, Janice Petrey, Dolan E. Roe and Linda Roe, were acting within the course and scope of their office or employment and had a duty to exercise ordinary care and use the above ground swimming pool, the deck, the deck furniture, the door locks, the failure to use a gate blocking access to the above the [sic] ground swimming pool and/or the deck, and the motion detector reasonably and prudently and to provide all integral safety components. Defendants breached these duties. Defendant's breach was a proximate cause of the injuries sustained by Plaintiffs and

the death of three year old Jonathan Atwood.[9]

The Atwoods asserted that DFPS waived sovereign immunity from this claim because

> [p]laintiffs' claims involved personal injury and death caused by a condition and/or use of personal property, the above ground swimming pool, the deck, the deck furniture, the door locks, the failure to use a gate blocking access to the above ground [sic] swimming pool and/or deck, the motion detector and the failure to provide all safety components. The condition and/or use of the personal property was defective and/or negligent and/or the negligent supervision by [DFPS and HCCPS] was such that under Texas law, a private person would be liable to Plaintiffs for this defective and/or negligent condition and/or use and/or supervision.

■ The Act provides that a governmental unit is liable for "personal injury or death caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant under Texas law." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). However, section 101.021(2) waives immunity for a use of personal property only if the governmental unit is itself the user. *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex.

2004). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." [10] *Id.* at 246; *Miller*, 51 S.W.3d at 588. A governmental unit does not "use" personal property merely by allowing someone else to use it and nothing more. *Cowan*, 128 S.W.3d at 246. In the absence of use by a government employee, a state agency is liable only if a state actor provided property lacking an integral safety component that led to the plaintiff's injuries. *Cowan*, 128 S.W.3d at 247 (citing *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex.1996)).

■ Assuming that the Atwood's claims involve personal injury and death proximately caused by a use of defective or nondefective tangible personal property, we conclude that, under these facts, DFPS was not itself the user. *See id.* at 246. First, as foster parents, the Roes do not meet the definition of government employees under the Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(2).[11] Unlike employees, foster parents like the Roes are not paid a salary, nor are they otherwise "in the paid service of a governmental unit." Instead, foster parents are only reimbursed for expenditures made on behalf of the child. *See* 40 TEX. ADMIN. CODE § 700.328 (regulating foster care assistance payments). Indeed, these "reimbursements" are not "income" for tax purposes. I.R.C. § 131. Under these facts,

---

9. The Atwoods further alleged that, at the time of the incident, the Roes were "employees, representatives, agents, servants, borrowed servants and/or under the control of ... [and] subject to the rules, policies and procedures of [DFPS]."

10. Under the Act, the Texas Supreme Court has distinguished claims involving the failure to use, or the non-use of property, which do not waive sovereign immunity, from claims involving a "condition or use" of tangible personal property that causes injury, which do effect a waiver. *Texas Dep't of Criminal*

*Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001).

11. The Act defines an "employee" as:

> a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of the independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(2).

the Roes were not in the paid service of DFPS and, therefore, were not employees under the Act. *See Bishop v. Texas A & M Univ.*, 35 S.W.3d 605, 607 (Tex.2000) (discussing *Harris County v. Dillard*, 883 S.W.2d 166, 167 (Tex.1994) (volunteer reserve-deputy sheriff was never in paid service of governmental unit and therefore not employee under the Act)).

Second, although DFPS regulated the Roe foster home and had the right to place or remove the Atwood children in the Roe foster home, DFPS does not have the legal right to control the Roes. The Roe foster home was required to meet the appropriate minimum standards established by DFPS.[12] However, even if DFPS should discover that a foster family is violating the DFPS minimum standards in a manner that poses a risk to the health or safety of children, it does not have the authority to force the foster family to comply; rather, its only recourse is to remove the foster children and revoke the foster parents' license. *See* Tex. Hum. Res.Code Ann. §§ 42.0705–42.073 (delineating remedies for violations of applicable standards). Consequently, although DFPS had the au-

thority to remove the children or to cancel the foster parents' licenses if the foster parents did not comply with DFPS's requirements, DFPS had no authority or the legal right to control the Roe's property or the details of the tasks the Roes performed in their foster parent roles.[13] *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.001(2); *Thomas v. Harris County*, 30 S.W.3d 51, 54 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (sheriff's right to remove physician deemed undesirable does not mean Harris County controlled the details of the physicians' work; requiring physician to comply with Harris County's security policies and guidelines is no indication that Harris County controlled the details of the physician's work).

Based on the pleadings and relevant jurisdictional evidence before us, we conclude that the Roes, as foster parents of a regulated, registered foster home licensed by DFPS, are not employees as defined under the Act, and, therefore, were not acting within the scope of employment.[14] Therefore, we hold that, with regard to the personal property at issue here, DFPS did not "put or bring [it] into action or service;

---

**12.** DFPS established core requirements for agency foster families. *See* Tex. Hum. Res.Code Ann. §§ 42.001; 42.042 (Vernon Supp.2004). Part of the core requirements mandate that the child-placing agency sign a written agreement with the foster parents at the time the agency home is verified. This agreement must specify, among the following: (1) the financial agreement between the child-placing agency and the foster home, (2) that the child-placing agency has the right to remove the child at the agency's discretion, (3) that the agency must consent to discharge a child from the home, (4) that the agency is responsible for regular supervision of the home, (5) what the agency's policies are in regard to child care, discipline, supervision of children, and (6) what the agency's policies are in regard to reports to the agency from the foster parents regarding foster children and other events or occurrences impacting the provision of foster care.

**13.** Although the Roes do not argue that section 42.053(a) of the Texas Human Resources Code provides evidence that DFPS had a statutory right of control over the Roes, this section is inapplicable because we have previously held that DFPS is not a child-placing agency. *See* Tex. Hum Res.Code Ann. § 42.053(a) (Vernon 1997); *Schutz,* 101 S.W.3d at 521 ("We see no indication the legislature intended [DFPS] to be considered a child-placing agency.").

**14.** Under the Act, "scope of employment" is defined as "performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem.Code Ann. § 101.001(5).

or employ for or apply [it] to a given purpose." *See Cowan,* 128 S.W.3d at 246.

Accordingly, we next consider whether a state actor provided property that lacked an integral safety component and that the lack of this integral safety component led to Jonathan's death and the Atwood's injuries. *See Cowan,* 128 S.W.3d at 247; *Robinson v. Central Texas MHMR Ctr.,* 780 S.W.2d 169, 171 (Tex.1989) (MHMR employees provided swimming attire that lacked life preserver); *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 300 (Tex.1976) (university employees provided football uniform that lacked knee brace). The Atwoods allege that the aforementioned personal property lacked an integral safety component and that DFPS had a duty to provide all integral safety components. The Atwoods did not allege, however, nor is there any evidence that, DFPS provided any of the personal property that allegedly lacked an integral safety component.[15] *See Cowan,* 128 S.W.3d at 247. Accordingly, we hold that the Atwoods' claim against DFPS for injury arising out of condition or use (or misuse) of defective or nondefective tangible personal property is insufficient to waive sovereign immunity under the Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2); *Brown,* 80 S.W.3d at 554–55; *Cowan,* 128 S.W.3d at 247.

**2. *Waiver of Immunity Based on Premises Defect***

In the underlying cause, the Atwoods alleged that

[a]t the time of the incident made the basis of the present litigation, the [Roe] foster home contained a premise defect, the deck attached to the back of the Roe home extended to the pool and provided open access to the pool. This condition or defect presented an unreasonable risk

of harm in which there was sufficient probability of a harmful event occurring that a reasonable prudent person would have foreseen it or some similar event was likely to happen. Defendants [DFPS and HCCPS] along with Linda Roe and Dolan E. Roe were the possessors of the property in that they exercised control over the Roe home and/or the premise defect and had the power or authority to manage, direct, restrict, superintend, regulate, govern, administer or oversee the [Roe] home and/or the premise defect. Defendants [DFPS, HCCPS, and the Roes] owed Plaintiffs the same duty owed to a licensee to exercise ordinary care to warn Plaintiffs or to make reasonably safe a known dangerous condition about which Plaintiffs were unaware and not to injure Plaintiffs through willful, wanton, or grossly negligent conduct. Defendants breached this duty. Additionally, Defendants had knowledge of the dangerous condition and therefore had the duty to warn Plaintiffs of the condition or to make the condition reasonably safe. Defendants breached this duty. Plaintiffs were unaware of the condition, Defendants failed to warn Plaintiffs of the condition, and Defendants failed to make the condition reasonably safe. Defendants breach was a proximate cause of the injuries sustained by Plaintiffs and the death of three year old Jonathan Atwood.

The Atwoods asserted that DFPS waived sovereign immunity from this claim because:

Plaintiffs claims involved personal injury and death caused by a condition and/or use of real property, the deck attached

---

**15.** In their petition, the Atwoods did not contend that DFPS purchased or installed any of the aforementioned personal property, nor did they assert that DFPS reimbursed the Roe's for the purchase or installation of the same property.

to the back of the Roe home provided open access to the pool. This condition and/or use of the real property was defective and/or negligent, such that under Texas law, a private person would be liable to Plaintiffs for this defective and/or negligent condition and/or use.

▆▆▆▆ With respect to premise defects,[16] the Act limits the governmental duty owed a claimant to "the duty that a private person owes to a licensee on private property." TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a) (unless the claimant pays for the use of the premises). This duty entails a responsibility not to injure the licensee through willful, wanton, or grossly negligent conduct. *Brown,* 80 S.W.3d at 554 (citing *State Dep't of Highways and Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992)). It also entails a responsibility to either warn the licensee or to make the condition reasonably safe if the property possessor has knowledge of a dangerous condition and the licensee does not. *Id.* at 554–55.

▆▆▆▆▆ Generally, a licensee asserting a premises defect claim must first show that the defendant possessed—that is, owned, occupied, or controlled—the premises where the injury occurred. *Brown,* 80 S.W.3d at 554 (citing *Wilson v. Texas Parks & Wildlife Dep't,* 8 S.W.3d 634, 635 (Tex.1999)). Even if a defendant did not own or physically occupy the property, it may be held liable for a dangerous condi-

tion on the property if it assumed control over and responsibility for the premises. *Brown,* 80 S.W.3d at 556 (citing *City of Denton v. Van Page,* 701 S.W.2d 831, 835 (Tex.1986)). "The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *Id.*

▆▆▆ In this case, it is undisputed that DFPS neither owned [17] nor occupied the premises at issue. Thus, with regard to the Atwood's premise defect claim, the question before this court is whether DFPS assumed sufficient control over that part of the Roe's property so that DFPS had the responsibility to remedy the danger to Jonathan. *See Brown,* 80 S.W.3d at 556.

The Atwoods alleged that, at the time of the incident, DFPS and the Roes were in possession of the property because they exercised control over the Roe home and the premise defect. In support of their claim, the Atwoods contended that DFPS approved and licensed the Roe foster home and the Roe family itself, and the Roes operated with the permission of, and subject to the supervision and control of DFPS.

Pursuant to DFPS core requirements for agency foster families, the Roe foster home was required to meet all applicable

---

16. "Premise defect" is not defined by the Act. Therefore, to determine if a condition falls under the definition of premise defect, we look to the ordinary meaning of the words. *Cobb v. Texas Dep't. of Criminal Justice,* 965 S.W.2d 59, 62 (Tex.App.-Houston [1st Dist.] 1998, no pet.). We define a "premises defect" as a defect or dangerous condition arising from a condition on the premises. *Rushing,* 7 S.W.3d at 915 (citing *Univ. of Tex. Med. Branch v. Davidson,* 882 S.W.2d 83, 84 (Tex. App.-Houston [14th Dist.] 1994, no writ)). We define "premises" as a building, its parts,

grounds, and appurtenances. *Id.* (citing *Cobb,* 965 S.W.2d at 62). Finally, we define a "defect" as an imperfection, shortcoming, or "want of something necessary for completion." *Id.*

17. In its combined plea to the jurisdiction, motion for summary judgment, and motions to dismiss and sever, DFPS attached as an exhibit a copy of the Roe's deed to their home.

fire, health, and safety laws, ordinances and regulations. Likewise, DFPS required that the Roe foster home and outdoor areas must be maintained, repaired, and cleaned so that they were not hazardous to the children in care. DFPS was responsible for providing regular supervision of the Roe foster home and all foster children in the home by qualified staff, and to assisting the Roes in maintaining minimum standards for foster homes. Specifically, DFPS had the responsibility to (1) complete a quarterly assessment on the Roe foster home, (2) document any noncompliance with DFPS policies and minimum standards, (3) follow-up on any noncompliance, and (4) document that corrections had been made.[18]

The record demonstrates that, five days after the Atwood children were placed in the Roe foster home, DFPS caseworker Jayne completed a quarterly assessment of the Roe home. At that time, Jayne became aware of the danger posed by the lack of a locked gate to block access to the above-ground swimming pool in the Roe's backyard, and instructed Linda Roe that it was DFPS Region 6 policy that there must be a locked gate to block access to the pool from the deck. It is plain that DFPS standards and policies required that the Roes make their home and outdoor areas safe for the foster children in their care,[19] in this case, by building a locking gate to block access to the above-ground swimming pool in the backyard.

In *County of Cameron v. Brown*, the Texas Supreme Court concluded that the County assumed sufficient control over a causeway it did not own because the County had a maintenance contract with the State, and the County had assumed certain maintenance responsibilities over the causeway's streetlight system. *Brown*, 80 S.W.3d at 556. Here, unlike *Brown*, the Atwoods cite to evidence of rules and regulations that the Roes had to follow to make their premises reasonably safe. Specifically, DFPS required that the Roes maintain, repair, and clean their home and outdoor areas so that they are not hazardous to the children. These responsibilities clearly fall to the Roes, not DFPS.

In *City of Denton v. Page*, the Texas Supreme Court considered whether the City of Denton was liable for the dangerous condition of a storage building that was set on fire. 701 S.W.2d 831 (Tex. 1986). The City of Denton did not own the storage building, but it had sent a fire marshal to inspect the building on three occasions. In finding no liability, the Court stated,

> The City of Denton did not exercise control over the storage building, nor did it expressly or impliedly contract to remedy any dangerous condition on the property. The fire marshal did not create the dangerous condition, nor did he promise to find and remedy an unsafe condition in the building, nor did he promise to make the storage building safe from arson. We hold that the City of Denton is not liable for the dangerous

---

18. The Roes assert that DFPS's rules and regulations demonstrate that DFPS assumed sufficient control over the Roe's home to subject it to liability for a dangerous condition on the premises. We decline to hold that rules and regulations and nothing more, is all that is needed to show that a governmental entity maintained sufficient control over a premises. To make such a broad holding would essentially provide a blanket waiver of sovereign

immunity for a premises defect in any instance in which a governmental entity creates rules and regulations over such premises.

19. In order to obtain and maintain licensure as a foster home, the Roes were required to meet and maintain DFPS minimum standards for foster homes, as well as any local Region 6 policies specific to Liberty County.

condition of the storage building because [the City of Denton] neither owned, occupied, nor controlled the premises, nor did it create the dangerous condition. *Page,* 701 S.W.2d at 835.

Our review of the record demonstrates that the Atwoods did not assert, nor offer any evidence, that DFPS had purchased or installed the above-ground swimming pool or decking in the Roe's backyard, or that DFPS had authorized the purchase or installation of either the pool or the decking. Nor did the Atwoods contend or offer any evidence that DFPS reimbursed the Roe's for the purchase or installation of either the above-ground swimming pool or the decking. Likewise, the Atwoods did not assert, nor offer any evidence that DFPS maintained either the above-ground pool or decking in the Roe's backyard. *Brown,* 80 S.W.3d at 556 (taking into consideration whether non-owner assumed maintenance responsibilities over property).

Similar to *Page,* DFPS neither created the alleged premises defect, nor did it expressly or impliedly contract to remedy any dangerous condition on the property. *See Page,* 701 S.W.2d at 835. Thus, DFPS did not assume control over that part of the Roe's property that presented the potential danger to Jonathan such that DFPS can be liable for the Roe's failure to remedy it. *See Brown,* 80 S.W.3d at 556; *Page,* 701 S.W.2d at 835. Construing the pleadings in the Atwood's favor and looking to the pleader's intent, we conclude that they do not adequately allege the first element of a premises-liability claim—that DFPS possessed the property. *See Brown,* 80 S.W.3d at 555–56. Accordingly, we hold that the Atwood's pleadings and jurisdictional evidence are insufficient to allow them to maintain a claim against

DFPS for injury arising out of a premise defect. *See Brown,* 80 S.W.3d at 554.

### Joint Enterprise and Joint Venture

#### Joint Enterprise

Joint enterprise liability renders each party an agent of the other, and, thus, holds each responsible for the negligent act of the other. *Texas Dep't of Transp. v. Able,* 35 S.W.3d 608, 613 (Tex. 2000) (citing *Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 14 (Tex.1974)). The elements of a joint enterprise are (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Id.* at 613 (citing RESTATEMENT (SECOND) OF TORTS § 491 cmt. c (1965); *Blount v. Bordens, Inc.,* 910 S.W.2d 931, 933 (Tex.1995); *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 718 (Tex. 1995)).

The Atwoods alleged that, at the time of the incident, DFPS was engaged in a joint enterprise with both the Roes and with HCCPS.[20] We disagree. The Texas Supreme Court has limited the application of joint enterprise to those having a business or pecuniary interest, reasoning that "there is not the same reason for imposing liability in the non-commercial situations which are more often matters for friendly or family cooperation and accommodation." *Able,* 35 S.W.3d at 613–14 (citations omitted). We decline to characterize a foster care agreement between DFPS and an agency foster family as an enterprise "having a business or pecuniary interest." Because this precludes a finding of joint enterprise with respect to this appeal, we

---

**20.** Because HCCPS is not a party to this appeal, we do not address whether DFPS was engaged in a joint enterprise with HCCPS at the time of the incident.

need not consider whether there is evidence of the other elements of a joint enterprise. Accordingly, we hold that the Atwoods have not stated an actionable claim against DFPS on the grounds of joint enterprise theory.

### *Joint Venture*

■ To establish the existence of a joint venture, the following elements must be present: (1) a community of interest; (2) an agreement to share profits; (3) an agreement to share losses; and (4) a mutual right of control or management of the enterprise. *Swinehart v. Stubbeman*, 48 S.W.3d 865, 879 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex.1981)). A joint venture is not established if any one of the four elements is not present. *Id.* (citations omitted).

■ The Atwoods alleged that, at the time of the incident, DFPS was engaged in a joint venture with both HCCPS and with the Roes.[21] There is no evidence in the record, however, that any foster care agreement between DFPS and the Roes included any sort of agreement to share profits or losses. Indeed, no party entering into a foster care agreement can expect such an agreement to yield any sort of profit, except of an intangible nature. Because this precludes a finding of joint venture with respect to this appeal, we need not consider whether there is evidence of the other elements of a joint venture. Accordingly, we hold that the Atwoods have not stated an actionable claim against DFPS on the grounds of joint venture theory.

### CONCLUSION

The Atwood's petition does not allege a cause of action that falls within any of the three categories in which the Texas Tort Claims Act waives the sovereign immunity afforded to DFPS; thus the trial court erred in denying DFPS's plea to the jurisdiction. Accordingly, we reverse the judgment of the trial court and render judgment dismissing the Atwood's suit against DFPS for want of jurisdiction.

En banc consideration was requested.

A majority of the justices voted to deny en banc consideration.

Justice KEYES, dissenting from the denial of the request for en banc consideration, joined by Justice JENNINGS and joined by Justice HIGLEY in regard to premises defect.

EVELYN V. KEYES, Justice, dissenting from denial of en banc consideration.

In this important case of first impression, the panel holds that the Texas Tort Claims Act[1] does not waive the Texas Department of Family and Protective Services' (DFPS's) sovereign immunity to liability for claims arising from the death or injury of a child caused by the use of tangible property or by a premises defect in a licensed foster home. Because of the potentially far-reaching effects of the opinion in this case on the protections afforded children in the custody of the State and the liability of foster parents and licensed child-care facilities, I respectfully dissent from denial of en banc consideration. *See* TEX.R.APP. P. 41.2(c). I would affirm the trial court's denial of DFPS's plea to the

---

21. Because HCCPS is not a party to this appeal, we do not address whether DFPS was engaged in a joint venture with HCCPS at the time of the incident.

1. TEX. CIV. PRAC. & REM.CODE ANN. § 101.025 (Vernon Supp.2004–2005).

jurisdiction and remand for further proceedings in accordance with this opinion.

As the panel acknowledges, the State, its agencies, and its subdivisions enjoy sovereign immunity to tort liability unless immunity has been waived. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001(3)(A–B), 101.025 (Vernon Supp.2004–2005); *County of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002). The Tort Claims Act expressly waives sovereign immunity in three general areas: (1) injury caused by an employee's use of a motor-driven vehicle, (2) injury caused by a condition or use of tangible personal or real property, and (3) injury caused by a premises defect. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021– 101.022(a) (Vernon Supp.2004–2005); *Brown,* 80 S.W.3d at 554.

The question before this Court is whether the Atwoods have pleaded claims that fall within the Tort Claims Act's waiver of immunity because (1) their pleadings allege that an employee or employees of DFPS (a) caused the Atwoods' injuries by the use or misuse of tangible personal or real property or (b) provided property that lacked an integral safety component and the lack of this integral safety component led to the Atwoods' injuries or (2) the pleadings state a claim for a premises defect by adequately alleging that an employee or employees of DFPS, acting within the scope of their DFPS duties, (a) breached a duty not to injure the Atwoods through willful, wanton, or grossly negligent conduct or (b) had knowledge of a dangerous condition that the Atwoods did not have and had a duty to warn the Atwoods or to make the condition reasonably safe, but did not.

### Adequacy of the Atwoods' Pleadings

Three-year-old Jonathan Atwood drowned in the swimming pool of a licensed agency foster home owned by the Roe family in which he had been placed by DFPS.

The Atwoods pleaded that DFPS and its employees, including the Roes themselves and those employees named in the petition who were assigned to license, to inspect, and to supervise the Roes' foster home, all "were acting within the course and scope of their office or employment and had a duty to exercise ordinary care and use the above-ground swimming pool, the deck, the deck furniture, the door locks, the failure to use a gate blocking access to the above-ground swimming pool and/or deck, and the motion detector reasonably and prudently and to provide all integral safety components"; they further pleaded that DFPS, acting through those employees, breached those duties, proximately causing the Atwoods' injuries.

The Atwoods further pleaded that the deck attached to the back of the Roe home and extending to the swimming pool, to which the deck provided open access, constituted a premises defect in that it presented an unreasonable risk of harm that a reasonably prudent person would have foreseen; that DFPS, through its employees, exercised control over the Roe home and/or the pool area; that DFPS owed the Atwoods a duty not to injure them through willful, wanton, or grossly negligent conduct; and that DFPS breached that duty. Finally, the Atwoods pleaded that DFPS, through its employees, had knowledge of the dangerous condition and had a duty to warn them or to make the condition reasonably safe, and that it breached this duty, proximately causing the Atwoods' injuries.

Although the Atwoods' pleadings appear to place their claims squarely within the Tort Claims Act's waiver of sovereign immunity, the panel opines that section 101.021(2) waives immunity for a use of tangible property only if the governmental

unit is itself the user, and it reasons that DFPS was not a "user" of personal or real property at the foster home where Jonathan Atwood drowned because the Roes owned the home and above-ground pool and they were not DFPS employees as that term is defined by the Tort Claims Act. I respectfully disagree with the panel's conclusion that the Roes were not DFPS employees or agents; and I also disagree with the panel's conclusion that only the Roes were "users" of the property for DFPS purposes—*i.e.,* for foster care and all of the duties arising out of the foster care relationship between the Roes and DFPS—and not DFPS, which licensed the Roes' home as a child-care facility, placed the Atwood children in the Roes' home as an agency foster home, and retained statutory rights and duties to supervise and inspect the home and to enforce legislative and agency standards.

The panel also opines that the waiver of sovereign immunity for a premise defect set out in sections 101.021 and 101.022(a) of the Tort Claims Act does not apply because, to be liable for a premises defect, the agency must control the premises and the Roes, who were not DFPS employees, rather than the agency itself, controlled the premises. Again, I respectfully disagree. I would hold that the Roes, as paid foster parents, were "employees" of the agency and that, through the Roes and other employees, DFPS did control the premises of the foster home.

**Waiver of Immunity Based on "Use" of Tangible Real or Personal Property by Government Employees Acting Within the Scope of Employment**

I would hold that the Roes were DFPS "employees" and that the Atwoods have adequately pleaded claims for the use or misuse of tangible personal or real property by DFPS employees for which the Tort Claims Act waives sovereign immunity.

***Definition of Government Employee***

The panel concludes that, as foster parents, the Roes do not meet the definition of government employees under the Tort Claims Act and thus cannot have been acting within the scope of their duties as DFPS employees in operating a licensed child-care facility. The Tort Claims Act defines a government "employee" as:

> a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of the independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(2). The panel concludes that the Roes were not "employees" of DFPS as that term is defined in the Tort Claims Act because, unlike employees, foster parents like the Roes are not paid a salary and are not otherwise "in the paid service of a governmental unit" and also because DFPS did not have the legal right to control the Roes' performance of their tasks as foster parents. I respectfully disagree with both conclusions.

The stated purpose of Chapter 42 of the Human Resources Code, providing for the "Regulation of Certain Facilities, Homes, and Agencies that Provide Child–Care Services," is "to protect the health, safety, and well-being of the children of the state who reside in child-care facilities by establishing statewide minimum standards for their safety and protection and by regulating the facilities through a licensing program or by requiring child-care facilities to be regulated by alternative accreditation bodies." TEX. HUM. RES.CODE ANN. § 42.001 (Vernon Supp.2004–2005). The

stated policy of this State in promulgating Chapter 42 is "to ensure the protection of all children under care in child-care facilities...." *Id.* The foster care system is a legislatively constructed system and is highly regulated.

The Roes' home was an agency foster home. An agency foster home is defined by the Human Resources Code as "a [child-care] facility that provides care for not more than six children for 24 hours a day, is used only by a licensed child-placing agency, and meets department standards." Tex. Hum. Res.Code Ann. § 42.002(11) (Vernon Supp.2004–2005). By legislative mandate, "[a]n agency foster home ... is considered part of the child-placing agency that operates the agency foster home ... for purposes of licensing." *Id.* § 42.053(a) (Vernon 2003).

When the Atwood children were taken from the custody of their biological mother, DFPS became the managing conservator of the children and became responsible for protecting their rights. DFPS had complete control over where the Atwood children were placed, and it had a mandated legislative responsibility to place them in a safe environment. DFPS placed the children in the Roes' home.

As a regulated child-care facility, the Roe foster home was required to meet the appropriate minimum standards established by DFPS. *See id.* §§ 42.001, 42.042. Part of the core requirements mandate that a child-placing agency like DFPS sign a written agreement with the foster parents at the time the agency home is verified. This agreement must specify, among other things, the following: (1) the financial agreement between the child-placing agency and the foster home; (2) that the child-placing agency has the right to remove the child at the agency's discretion; (3) that the agency must consent to discharge a child from the home; (4) that the

agency is responsible for regular supervision of the home; (5) what the agency's policies are in regard to child care, discipline, supervision of children; and (6) what the agency's policies are in regard to reports to the agency from the foster parents regarding foster children and other events or occurrences impacting the provision of foster care. *See* 40 Tex. Admin. Code § 720.48(f) (2004). If DFPS discovers that a foster family is violating DFPS's minimum standards in a manner which poses a risk to the health or safety of children, it has the authority to demand that the foster family comply, and, if the family does not, to remove the foster children and to close down the foster home. *See id.* §§ 42.0705–42.073 (Vernon 2003 & Supp.2004–2005) (delineating remedies for violations of applicable standards).

DFPS and the Roes entered into a written contract under which the Roes operated their home as an agency foster home and were compensated for their services. Indeed, the panel itself acknowledges that the Texas Administrative Code regulates foster care assistance payments and that the Roes received such payments pursuant to the Code. *See* 40 Tex. Admin. Code § 700.308 (2004).

Because the Roes' foster home was statutorily deemed to be part of the child-placing agency that placed the Atwood children in the home, and because the Roes were paid for their services as foster parents in accordance with state law and the contract they executed with DFPS pursuant to that law, I would hold that the Roes satisfied the definition of government employees as persons "in the paid service of a governmental unit." Tex. Civ. Prac. & Rem.Code Ann. § 101.001(2). Because DFPS had both a statutory and a contractual right of control over the foster home to ensure the protection of children placed by the state in that facility in accordance

with specified standards, I would also hold, in contrast to the panel, that the exclusion from the definition of a government employee of "a person who performs tasks the details of which the governmental unit does not have the legal right to control" does not apply to the Roes. *See id.* Indisputably, the salaried DFPS employees who were charged with supervising and inspecting the Roe foster home were also state employees.

### Waiver of Immunity

To state a claim involving the use of non-defective property by a governmental unit, a party must allege that the property was used or misused by a government employee acting within the scope of his employment so as to cause injury. *Texas Parks & Wildlife Dep't v. Garrett Place, Inc.,* 972 S.W.2d 140, 143 (Tex.App.-Dallas 1998, no pet.). To be a proximate cause of injury for purposes of waiver under the Tort Claims Act, the government employee's use of tangible personal or real property must be a substantial factor in bringing about the injury. *Texas Dep't of Mental Health & Mental Retardation v. Pearce,* 16 S.W.3d 456, 460 (Tex.App.-Waco 2000, pet dism'd w.o.j.). In the absence of use of property by a government employee, a state agency is liable only when a state actor has provided property that lacks an integral safety component and the lack of this integral safety component led to the plaintiff's injuries. *San Antonio State Hosp. v. Cowan,* 128 S.W.3d 244, 247 (Tex.2004) (citing *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 585 (Tex.1996)).

The Atwoods have pleaded that Jonathan Atwood's death resulted directly from the Roes' misuse of tangible real and/or personal property—including the above-ground swimming pool, the deck, the deck

furniture, the door locks, the failure to use a gate blocking access to the above-ground swimming pool and/or deck, and a non-working motion detector. Alternatively, they have pleaded that even if the pool that caused Jonathan's death by drowning was not itself being "used" by a state actor at the time of his death, but rather was being used by Jonathan, who was not a state actor, DFPS is still not absolved from potential liability for his death because, through its employees, it placed Jonathan in a foster home that lacked integral safety components, leading to the injuries that form the basis of their claim. *See Cowan,* 128 S.W.3d at 247; *Robinson v. Central Texas MHMR Ctr.,* 780 S.W.2d 169, 171 (Tex.1989) (MHMR employees provided swimming attire that lacked life preserver); *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 300 (Tex.1976) (university employees provided football uniform that lacked knee brace).

Accordingly, I would hold that the Atwoods have adequately pleaded a claim for which section 101.021(2) of the Tort Claims Act waives sovereign immunity. Specifically, they have pleaded that an employee or employees of DFPS (a) caused the Atwoods' injuries by the use or misuse of tangible personal or real property or (b) provided property that lacked an integral safety component and the lack of this integral safety component led to Jonathan's death and the Atwoods' injuries.

### Waiver of Immunity Based on Premises Defect

I would also hold that the Atwoods have pleaded a premises defect for which the Tort Claims Act waives sovereign immunity.

With respect to premises defects,[2] the Tort Claims Act limits the governmental

---

2. "Premises defect" is not defined by the Act.   Therefore, to determine if a condition falls

duty owed a claimant to "the duty that a private person owes to a licensee on private property." TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a). This duty entails a responsibility not to injure the licensee through willful, wanton, or grossly negligent conduct. *County of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002) (citing *State Dep't of Highways and Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992)). The duty also entails a responsibility to either warn the licensee or to make the condition reasonably safe if the property possessor has knowledge of a dangerous condition and the licensee does not. *Id.* at 554–55.

### DFPS's Right to Control the Premises

Generally, a licensee asserting a premises defect claim must first show that the defendant possessed—that is, owned, occupied, or controlled—the premises where the injury occurred. *Brown,* 80 S.W.3d at 554 (citing *Wilson v. Texas Parks & Wildlife Dep't,* 8 S.W.3d 634, 635 (Tex.1999)). Even if a defendant did not own or physically occupy the property, it may be held liable for a dangerous condition on the property if it assumed control over and responsibility for the premises. *Id.* at 556 (citing *City of Denton v. Van Page,* 701 S.W.2d 831, 835 (Tex.1986)). "The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *Id.*

In this case, it is undisputed that the Roes owned and occupied the premises at issue. Thus, with regard to the Atwood's premises defect claim, the question before this court is whether the Roes, as employees of DFPS, and/or DFPS itself assumed sufficient control over the property that presented a danger to Jonathan Atwood so that the Roes had the responsibility to remedy it in their capacity as paid DFPS foster parents or DFPS had the duty to require the Roes to remedy it. *See id.*

Pursuant to DFPS's core requirements for agency foster families, the Roe foster home was required to meet all applicable fire, health, and safety laws, ordinances and regulations. Likewise, DFPS required that the Roe foster home and outdoor areas be maintained, repaired, and cleaned so that they were not hazardous to the children in care. DFPS was responsible for providing regular supervision of the Roe foster home and all foster children in the home by qualified staff, and to assisting the Roes in maintaining minimum standards for foster homes. Specifically, DFPS had the responsibility (1) to complete a quarterly assessment on the Roe foster home, (2) to document any noncompliance with DFPS policies and minimum standards, (3) to follow-up on any noncompliance, and (4) to document that corrections had been made. Under DFPS's written "Minimum Standards and Guidelines," the responsibility for the care of a child placed by DFPS into a regulated child-care facility becomes a joint responsibility between the agency and the facility, including a licensed agency foster home, is

---

under the definition of premises defect, we look to the ordinary meaning of the words. *Cobb v. Texas Dep't. of Criminal Justice,* 965 S.W.2d 59, 62 (Tex.App.-Houston [1st Dist.] 1998, no pet.). We define a "premises defect" as a defect or dangerous condition arising from a condition on the premises. *City of Houston v. Rushing,* 7 S.W.3d 909, 915 (Tex. App.-Houston [1st Dist.] 1999, pet. denied)

(citing *Univ. of Tex. Med. Branch v. Davidson,* 882 S.W.2d 83, 84 (Tex.App.-Houston [14th Dist.] 1994, no writ)). We define "premises" as "a building, its parts, grounds, and appurtenances." *Id.* (citing *Cobb,* 965 S.W.2d at 62). Finally, we define a "defect" as an imperfection, shortcoming, or "want of something necessary for completion." *Id.*

required to meet minimum standards on an on-going basis.

DFPS standards and policies required that the Roes make their home and outdoor areas safe for the foster children in their care,[3] in this case, by building a locking gate to block access to the above-ground swimming pool in the backyard. The record demonstrates that, five days after the Atwood children were placed in the Roe foster home, DFPS caseworker Linda Jayne completed a quarterly assessment of the Roe home. At that time, Jayne became aware of the danger posed by the lack of a locked gate to block access to the above-ground swimming pool in the Roe's backyard, and she instructed Linda Roe that it was DFPS Region 6 policy that there must be a locked gate to block access to the pool from the deck. This condition was not remedied; Jonathan Atwood drowned; and DFPS conducted an investigation in which it found the Roes and their DFPS agency supervisor to be in violation of law.

The Atwoods pleaded:

Residential Child Care Licensing (hereinafter RCCL) is the [DFPS] agency responsible for investigating allegations of abuse and neglect by regulated childcare facilities. On or about August 2, 1999 and on behalf of [DFPS], HCCPS, and LCCPS, RCCL began an investigation of the drowning of Jonathan Atwood. RCCL determined:

[t]here is "Reason to Believe" that Linda Roe is a perpetrator of neglectful supervision in the death of Jonathan Atwood as defined in the Texas Family Code Chapter 261.001(4)(B)(I) "placing a child or failing to remove a child from a situation that a reasonably prudent person would realize re-

quires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities and that results in a bodily injury or a substantial risk of immediate harm to the child."

\* \* \* \*

Mrs. Roe admitted that she was told by her FAD worker, Linda Jayne, to put a gate at the deck's entrance to the pool and [neither] she nor her husband had placed a gate at the entrance until after Jonathan's drowning. Mrs. Roe also admitted that she normally places deck furniture that consists of chairs and a hammock at the deck's entrance to the pool, but on the day that Jonathan drowned, she did not place the deck furniture at the entrance. Mrs. Roe admitted that she had knowledge that Jonathan knew how to lock and unlock the locks on the doorknobs of her home. Linda Jayne's quarterly report indicates that she discussed with the Roes during her home visit on 7–19–99 that they must have blocked access with a locked gate to keep the children from accessing the pool. Linda Jayne stated that the Roes agreed to complete this task.

On September 13, 1999, [DFPS], HCCPS and LCCPS, by and through RCCL, issued findings of its investigation of the circumstances surrounding the drowning of Jonathan Atwood. RCCL determined that Region Six ( [DFPS], HCCPS, and LCCPS) was not in compliance with the following Minimum Standards for Child Placing Agencies:

---

**3.** To obtain and to maintain licensure as a foster home, the Roes were required to meet and to maintain DFPS's minimum standards for foster homes, as well as any local Region 6 policies specific to Liberty County.

After staffing the case with RCCL supervisor, Sherry Loyd, I determined a finding of "Reason to Believe" for Linda Roe in the neglectful supervision of Jonathan A, as defined in the Texas Family Code 261.001(4)(B)(I).

1610.1 The agency is responsible for protecting children's rights while a child is in substitute care and in adoptive placements prior to consummation of the adoption.

Non-compliance—*The agency did not ensure that Jonathan's rights were protected while he was in the Roe foster home which resulted in his death.*

\* \* \* \*

1610.3 Children must be placed and supervised appropriately in the least restrictive environment capable of meeting their needs. The placement must meet the child's physical and emotional needs, and must provide consideration for sibling relationships and cultural needs.

Non-compliance—*The agency did not ensure that Dolan and Linda Roe adequately supervised Jonathan A. and the child was able to gain access to the pool which ultimately led to his drowning.*

The RCCL findings were not contested or appealed by any party.

HCCPS is the regional headquarters for Region Six of [DFPS]. HCCPS and [DFPS] approved and licensed the ROE foster home. The ROE foster home and the Roe family operated with the permission of, and subject to the supervision and control of [DFPS], HCCPS and LCCPS. The ROE foster home and the appurtenances and fixtures thereto were subject to the approval, control and supervision of [DFPS], HCCPS and LCCPS. LINDA ROE and DOLAN E. ROE, as foster parents, were subject to the supervision and control of [DFPS], HCCPS and LCCPS.

At all times relevant to the facts made the basis of the present cause, Defendants LINDA ROE and/or DOLAN E. ROE were employees, representatives, agents, servants, borrowed servants and/or under the control of Defendants HCCPS, LCCPS and/or [DFPS]. At all times relevant to the facts made the basis of the present cause, Defendants LINDA ROE and/or DOLAN E. ROE were subject to the rules, policies and procedures of Defendants HCCPS, LCCPS and/or [DFPS].

(Emphasis in original.)

I would conclude that the Atwoods adequately pleaded that DFPS, through the Roes as operators of a licensed child-care facility and through its supervisory employees, exercised control over the premises as an agency foster home. *See Brown,* 80 S.W.3d at 556.

### DFPS's Duty Not to Injure the Licensee and Duty to Warn the Licensee or Make the Premises Reasonably Safe

The duty of control of premises entails a responsibility not to injure a licensee through willful, wanton, or grossly negligent conduct. *Brown,* 80 S.W.3d at 554 (citing *Payne,* 838 S.W.2d at 237). The duty of control also entails a responsibility either to warn the licensee or to make the condition reasonably safe if the property possessor has knowledge of a dangerous condition and the licensee does not. *Id.* at 554–55.

The Atwoods pleaded that

At the time of the incident made the basis of the present litigation, the [Roe] foster home contained a premise defect, the deck attached to the back of the Roe

home extended to the pool and provided open access to the pool. This condition or defect presented an unreasonable risk of harm in which there was sufficient probability of a harmful event occurring that a reasonable prudent person would have foreseen it or some similar event was likely to happen. Defendants [DFPS and HCCPS] along with Linda Roe and Dolan E. Roe were the possessors of the property in that they exercised control over the Roe home and/or the premise defect and had the power or authority to manage, direct, restrict, superintend, regulate, govern, administer or oversee the [Roe] home and/or the premise defect. Defendants [DFPS, HCCPS, and the Roes] owed Plaintiffs the same duty owed to a licensee to exercise ordinary care to warn Plaintiffs or to make reasonably safe a known dangerous condition about which Plaintiffs were unaware and not to injure Plaintiffs through willful, wanton, or grossly negligent conduct. Defendants breached this duty. Additionally, Defendants had knowledge of the dangerous condition and therefore had the duty to warn Plaintiffs of the condition or to make the condition reasonably safe. Defendants breached this duty. Plaintiffs were unaware of the condition, Defendants failed to warn Plaintiffs of the condition, and Defendants failed to make the condition reasonably safe. Defendants breach was a proximate cause of the injuries sustained by Plaintiffs and the death of three year old Jonathan Atwood.

The Atwoods asserted that DFPS waived sovereign immunity from this claim because

Plaintiffs claims involved personal injury and death caused by a condition and/or use of real property, the deck attached to the back of the Roe home provided open access to the pool. This condition and/or use of the real property was defective and/or negligent, such that under Texas law, a private person would be liable to Plaintiffs for this defective and/or negligent condition and/or use.

In my view, the Atwoods pleaded facts sufficient to state a claim for premises liability based on DFPS's duty not to injure the Atwood children through willful, wanton, or grossly negligent conduct. They also pleaded facts sufficient to show that DFPS employees had statutory and contractual responsibilities to make the pool area of the Roe foster home reasonably safe and that they breached those duties. Finally, they pleaded facts that would show, if proved, that DFPS had knowledge of the dangerous condition posed by the Roes' above-ground swimming pool, that the Atwoods did not have that knowledge, and that DFPS neither warned the Atwoods about the danger nor made the premises reasonably safe, proximately causing the Atwoods' injuries.

I would hold that the Atwoods adequately pleaded a premises-defect claim against DFPS for which sections 101.021(2) and 101.022 of the Tort Claims Act waive sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE §§ 101.021(2), 101.022.

I agree with the panel that the Atwoods did not establish the existence of a joint venture between the Roes and DFPS.

## CONCLUSION

The implications of the panel's holding in this important case of first impression are far-reaching. The stated purpose of Chapter 42 of the Human Resources Code is the protection of the health and safety of children in the care of the State. If state agencies charged with the placement, custody, and supervision of children are as, as the panel holds, immune from liability for claims arising from the injury or death of

those children whom the State has removed from their parents and placed in foster care in state-licensed and state-supervised agency foster homes, then I fear that the effectiveness of Chapter 42 will be severely undermined.

I do not believe that the Legislature intended that state agencies be immune from liability when a child in the care of the State is killed or injured at a state-licensed agency foster home by the use or misuse of tangible property by persons charged by the State with the protection of the health and safety of that child or by a premise defect at that child-care facility. Nor do I believe that the Legislature intended that foster parents who maintain state-licensed agency foster homes not be considered state employees in performing their statutory and contractual duties as foster parents or that agency foster-homes not be considered property controlled by the State. Rather, I believe that state agencies are responsible for the protection of children they have placed in foster care in state-licensed agency foster homes and that the Legislature provided for a waiver of sovereign immunity in cases such as this one precisely to ensure that the laws protecting the health and safety of children in state care are respected and enforced. I also fear the chilling effect of the panel's opinion on the willingness of persons to operate state-licensed agency foster homes because, under that opinion, the full brunt of liability for any injury to the child falls on the foster parents personally, as independent contractors, and not on the state agencies or departments that license, regulate, supervise, and inspect such foster homes.

I would hold that the Atwoods' petition alleges a cause of action that falls within two of the three categories for which the Texas Tort Claims Act waives sovereign immunity; thus, the trial court correctly denied DFPS's plea to the jurisdiction. Accordingly, I would grant en banc consideration, affirm the order of the trial court denying DFPS's plea to the jurisdiction, and remand the cause for further proceedings.