

## NUMBER 13-10-00679-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ERNEST DAYNE, INDIVIDUALLY AND
AS FATHER AND NEXT FRIEND OF
M.F.R.D., A MINOR FEMALE CHILD,**       **Appellant,**

**v.**

**TEXAS DEPARTMENT OF FAMILY
AND PROTECTIVE SERVICES,**       **Appellee.**

---

**On appeal from the 319th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant Ernest Dayne, individually and as father and next friend of M.F.R.D., a minor female child, filed this appeal from the trial court's order granting a plea and supplemental plea to the jurisdiction and motion to sever in favor of appellee Texas

Department of Family and Protective Services (DFPS).[1]   By two issues, Dayne contends that the trial court erred in granting the DFPS's plea to the jurisdiction and in severing his claims against DFPS into another cause.   We affirm.

## I.  BACKGROUND[2]

On appeal, Dayne alleges the following facts:

1.   In 2007, after M.F.R.D. was removed from her home because her parents had drug-use issues and then was removed from her great-grandmother's home, CPS placed her in an emergency facility.   M.F.R.D. ran away from this facility and was apprehended with marijuana in her possession;

2.   On March 26, 2010, when CPS again took possession of M.F.R.D., she was placed at Shoreline, Inc. (Shoreline or Shoreline Property), a private corporation licensed by DFPS;

3.   Xavier Arrisola, who was on probation at the time, and Juan Silvas Suarez were employees of Shoreline during M.F.R.D.'s residency there.   Robert Evans was also employed by Shoreline during part of that time;

4.   Arrisola and Evans were often alone with M.F.R.D. and fondled her on multiple occasions.   M.F.R.D. began to like the attention and apparently did not report these activities;

---

[1] Dayne filed suit against Shoreline, Inc., a Texas Corporation, the Texas Department of Family Protective Services (DFPS), Audrey Deckinga, Assistant Commissioner of Child Protective Services of the DFPS, in her personal and individual capacity, Sasha Rasco, Assistant Commissioner for Child Care Licensing of the DFPS, in her personal and individual capacity, Xavier Arrisola, Robert Evans, and Juan Silvas Suarez.   It is undisputed that Shoreline is a private entity regulated by the DFPS.   The trial court granted DFPS's plea to the jurisdiction and severed Dayne's claims against DFPS from his claims against the remaining defendants.   Dayne brings this appeal from the severed action.

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.   *See* TEX. R. APP. P. 47.4.

5. Suarez sexually assaulted another female ward at Shoreline. She was a friend of M.F.R.D.;

6. In August 2010, Suarez told M.F.R.D. that he would help M.F.R.D. and her friend escape so that M.F.R.D. could be reunited with her father and so that she and her friend could meet with Suarez and Arrisola;

7. Suarez gave a magnetic door security code to M.F.R.D. and two other wards at Shoreline;

8. On September 1, 2010, the girls went through a metal door which was unlocked and opened by an unknown female employee of Shoreline. M.F.R.D. then entered the security code to the magnetic door, and three wards left the building. The third ward changed her mind and returned to Shoreline;

9. M.F.R.D. and the other female ward spent the night with a friend, and on September 3, 2010, they called Arrisola and Suarez. The men picked up the girls and took them to a motel to spend the night. The men provided the girls with alcohol and cocaine and engaged in sexual intercourse with them;

10. The girls returned to their friend's house. The men continued to contact them by phone until the ward who had left Shoreline with M.F.R.D. was reunited with her parents on September 7, 2010; and

11. Later, M.F.R.D. contacted her father and her attorney indicating that she was safe, did not want to return to Shoreline, and believed that Arrisola might do something to her and her father in retaliation for this lawsuit.

Dayne sued DFPS for claims under the Texas Tort Claims Act (TTCA), specifically under section 101.021(2). *See id.* § 101.021(2) (West 2011) (generally waiving

3

sovereign immunity for injuries caused by a "condition" or "use" of property). Dayne's original petition alleged negligence and gross negligence against DFPS and asserted the following "areas of breach of duty":

(a) DFPS['S] failure to exercise ordinary care in ensuring that SHORELINE provide a professional staff that would ensure the safety and well[-]being of its residents, including [M.F.R.D.];

(b) DFPS['S] failure to investigate properly and/or the failure to take appropriate remedial measures following previous reports of improprieties at SHORELINE and following previous reports of improprieties involving members of SHORELINE'S staff; [and]

(c) DFPS['S] failure to protect [M.F.R.D.] from abuse and exploitation in contravention of its Mission, which is to protect children from abuse and exploitation.

Dayne also alleged that,

DFPS was negligent per se in that it breached, or failed to follow, its statutory and regulatory duties, including those set forth in Section 42 of the [Texas] Human Resources Code and in the Texas Administrative Code, to ensure the safety and well[-]being of the Children in its custody, including [M.F.R.D.], who were placed at Shoreline.

In his second supplemental petition, Dayne developed his claims against DFPS, alleging that,

DFPS was negligent and grossly negligent within the reach of the [TTCA], and waived its immunity from such liability, since its negligence and gross negligence toward Plaintiffs resulted in personal injury to them "caused by a condition or use of . . . real property" where DFPS "would, were it a private person, be liable to the claimant according to Texas law" [§ 101.021(2)].

As to the "condition" and "use" element of section 101.021(2), Dayne expressly asserted that during M.F.R.D.'s stay at Shoreline, the condition and the use of Shoreline's property as a site for the placement, care, safe well-being, and treatment of minor wards was "unsafe and dangerous sexually and morally" and therefore defective "because

4

[Shoreline] was staffed, in part, by ARRISOLA, EVANS and SUAREZ," who sexually exploited the wards, including M.F.R.D. *See id.* In addition, Dayne continued to claim that DFPS, which shall "provide protective services for children," *see* TEX. HUM. RES. CODE ANN. § 40.002(b)(1) (West Supp. 2010), was negligent in the exercise of its regulatory control relative to Shoreline.[3]

DFPS filed a plea to the jurisdiction and a supplemental plea asserting that Dayne did not allege a waiver of sovereign immunity under the TTCA as a matter of law. After hearing arguments by counsel, the trial court granted DFPS's plea to the jurisdiction and its motion to sever. This appeal followed.

## II. PLEA TO THE JURISDICTION

### A. Standard of Review

A plea to the jurisdiction seeks dismissal of a case based on a lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Sovereign immunity raises questions of subject-matter jurisdiction and is properly questioned in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). "Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law reviewed de

---

[3] *See, e.g.,* TEX. HUMAN RES. CODE ANN. § 42.042(a), (c), & (e) (West Supp. 2010) (explaining that the DFPS "shall make rules to carry out the provisions of this chapter," "shall provide a standard procedure for receiving and recording complaints," and "shall promulgate minimum standards that apply to licensed child-care facilities"); *id.* § 42.044 (West Supp. 2010) (allowing for DFPS's inspection of a facility regulated under this chapter); *id.* §§ 42.046, 42.048 (West Supp. 2010) (setting out the application process for a license to operate a child-care facility); *id.* § 42.056 (West Supp. 2010) (explaining that DFPS shall conduct background and criminal history checks on those persons, including facility employees, whose names are provided by the facility upon its application for a license and once every two years after the facility receives the license) (West Supp. 2010); *see also, e.g.,* 40 TEX. ADMIN. CODE § 745.21 (2010) (defining, in relevant part, "Minimum standards" under Title 40 as rules contained in chapter "748 of this title relating to General Residential Operations and Residential Treatment Centers"); *id.* §§ 748.1-748.4473 (2010) (setting out rules that apply to residential treatment centers through the permit holder, including developing, among other things, written personnel policies that ensure compliance with minimum employee qualifications).

5

novo." *Id.* at 226. We construe the pleadings liberally and look to the pleader's intent.

*Id.* However, when suing a governmental entity,

> [t]he [TTCA] provides a limited waiver of sovereign immunity, allowing suits to be brought against governmental units only in certain, narrowly defined circumstances. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998) ("the Legislature intended the waiver in the [TTCA] to be limited"). Therefore, "we must look to the terms of the [TTCA] to determine the scope of its waiver," *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996), and then must consider the particular facts of the case before us to determine whether it comes within that scope.

*State Dep't of Crim. Justice v. Miller,* 51 S.W.3d 583, 587 (Tex. 2001).

## B. Applicable Law

Section 101.021 waives governmental immunity (1) when personal injury is proximately caused by the negligence of an employee acting within his scope of employment if the personal injury arises from the operation or use of a motor-driven vehicle or equipment or (2) when personal injury is "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."[4] TEX. CIV. PRAC. & REM. CODE ANN. § 101.021; *see Tex. Dep't of Family & Protective Servs. v. Atwood*, 176 S.W.3d 522, 527 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Section 101.022(a) sets out the duty owed when governmental immunity is waived because of a premise defect. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022; *see Atwood*, 176 S.W.3d at 527.

## C. Analysis

---

[4] It is undisputed that DFPS is a "governmental unit" as defined by the TTCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(A) (West 2001) (defining "governmental unit" as "this state and all of the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices agencies, [and] councils"); *Tex. Dep't of Family & Protective Servs. v. Atwood*, 176 S.W.3d 522, 527 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

6

**1. Condition or Use of Real Property**

In this case, Dayne's underlying claims are not based on the use of a motor-driven vehicle by a DFPS employee or on the use of tangible personal property. *See id.* § 101.021(1)-(2). In addition, Dayne does not claim a premise defect. *See id.* § 101.022. Therefore, this Court will consider only whether Dayne's pleadings are sufficient to maintain a claim for injury arising out of a "condition" or "use" of real property. *See id.* § 101.021(2); *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2001).

To establish waiver under section 101.021(2), Dayne must have pleaded facts that show a condition or use of real property by DFPS that resulted in personal injury to M.F.R.D. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). The term "use," in this context, is defined as "to put or bring into action or service; to employ for or apply to a given purpose." *See San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004). The term "condition" has been judicially defined as "either an intentional or an inadvertent state of being" and as "a particular mode or state of being of a thing." *Webb County v. Sandoval*, 88 S.W.3d 290, 294 (Tex. App.—San Antonio 2002, no pet.).

In his petition, Dayne identified the real property as the "Shoreline Property" or "Shoreline." Dayne also described the condition or use of the Shoreline Property that allegedly resulted in personal injury to M.F.R.D as follows:

> The use [or condition] of [the Shoreline Property] as a site for the placement, care, safe well being and treatment of minor Wards of the State made such Property defective factually for the placement, care, safe well being and treatment of minor Wards of the State because it was staffed, in part, by ARRISOLA, EVANS and SUAREZ who, by their sexual exploitation of minor Wards of the State . . . made such Property unsafe and dangerous sexually and morally to minor female Wards placed there by DFPS and contradicted the very purpose of such Property as held out by SHORELINE to DFPS.

7

On appeal, Dayne argues that there is nothing in section 101.021(2) "to preclude the application of such words [as condition or use] to defects or dangers arising from an <u>operational defect</u> involving real property, *i.e. Atwood*, 176 S.W.3d at 527, the way such property is operated or used which makes it unsafe or defective for its intended or ordinary use." Dayne contends that section 101.021(2) "is broad enough to encompass the <u>nature and scope</u> of the negligence lawsuit for damages pleaded against the DFPS where the injuries allegedly sustained by Appellants were proximately caused by an unsafe and dangerous sexually and morally [sic] condition, use and/or condition and use of the Affected Property." Dayne continues, rephrasing his appellate argument as follows:

> The "condition" or "use" of the Affected Property . . . was unsafe and dangerous sexually and morally to [the Wards of the State] because it was staffed, in part, by Defendants Arrisola, Evans and Suarez "who, by their sexual exploitation of minor Wards of the State there * * * made such Property unsafe and dangerous sexually and morally to the Wards placed there by DFPS * * *

Dayne cites no legal authority in support of his proposition that these facts are sufficient to maintain a claim for injury arising out of a condition or use of real property by DFPS, and we have found none. Nonetheless, referring to repealed article 6252-19, section 13 of the Texas Revised Civil Statutes, Dayne urges this Court to adopt his reasoning by broadly and liberally construing section 101.021(2) as courts did under the prior statute. *See* TEX. REV. CIV. STAT. ANN. art. 6252-19, § 13 (Vernon 1970) (repealed) (providing that the act "shall be liberally construed to achieve the purposes hereof"). We decline to do so.

Considering Dayne's petition and construing it in his favor, as we must, *see Brown*,

8

80 S.W.3d at 555, the only asserted condition or use of the Shoreline Property that Dayne claims caused M.F.R.D.'s injury involves the presence and actions of three Shoreline employees. Dayne's asserted "unsafe use" does not involve putting or bringing the Shoreline Property, itself, into action or service. *See Cowan*, 128 S.W.3d at 246. The facts of this case do not support a "use" of the Shoreline Property that employs the real property, itself, for a purpose or applies it to a given purpose. *See id.* Furthermore, the facts that Dayne contends support a "defective condition" or an "operational defect" of the real property do not involve Shoreline Property's particular mode or state of being. *See Sandoval*, 88 S.W.3d at 294. Dayne's fundamental premise is flawed.

In this case, Dayne complains about the alleged actions of Shoreline's employees, not the condition or use of the real property itself. All allegations focus on the alleged intentional acts of Shoreline's employees. The specific conduct is the same conduct that forms the basis of his claims against Arrisola, Evans, and Suarez. The specific conduct—assault and battery or sexual assault—is clearly intentional. And all intentional torts against DFPS are barred by sovereign immunity as a matter of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (West 2011) (providing that the TTCA specifically excludes waiver for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort"). Therefore, the allegations fit squarely within section 101.057's waiver exclusion. *See id.*

In addition, there must be a nexus between the condition of the property and the injury in order to find proximate cause, and this nexus requires more than mere involvement of property—rather, the condition must actually have caused the injury. *See Bossley*, 968 S.W.2d at 343 ("Section 101.021(2) requires that for immunity to be waived,

9

personal injury or death must be proximately caused by the condition or use of tangible property."); *cf. Campos v. Nueces County*, 162 S.W.3d 779, 782 (Tex. App.—Corpus Christi 2005, pet. denied) (concluding in a premises-defect case where the plaintiff complained of non-functioning or improperly functioning equipment and areas which permitted guards to have unlimited, unmonitored access to inmates, that the mere intermingling of intentional torts with the negligence of a governmental unit does not render the governmental unit immune).   Here, Dayne complains only of the involvement of the property, not of a condition of the property that proximately caused the injury.

Looking at the substance of the pleadings, we conclude that Dayne's complaints are not about the use or condition of the Shoreline Property.   His complaints are not about defective premises or about the condition or use of tangible equipment owned by Shoreline.   Instead, Dayne's complaints are about the alleged intentional torts by Shoreline's employees.   Therefore, this argument fails.

### 2. Control

By his first issue, Dayne also contends that DFPS was negligent in the exercise of its licensing authority and its regulatory control over the operations of Shoreline Property and that DFPS's immunity has been waived by this resulting unsafe and dangerous condition.   Dayne argues that DFPS's connection to Shoreline and its property "stems from its licensing and substantial regulatory control over Shoreline, especially as to investigations, inspections[,] and Shoreline staffing, and constitutes a right to control nexus over Shoreline sufficient to come within the liability reach of TTCA § 101.021(2)." *See generally,* TEX. HUM. RES. CODE ANN. §§ 42.001-.078 (West Supp. 2010) (providing for the regulation of certain facilities, homes, and agencies that provide child-care

services); 40 TEX. ADMIN. CODE §§ 748.1-748.4473 (2010) (setting out rules that relate to general residential operations and residential treatment centers).

We are not persuaded by this argument because, even assuming Dayne's claims involved an injury proximately caused by a use or condition of real property, DFPS had no legal right to control Shoreline even if it regulated Shoreline. *See* TEX. HUM. RES. CODE ANN. § 42.042(a), (e) (West Supp. 2010) (explaining that the DFPS shall make rules to carry out the provisions of chapter 42 (Regulation of Certain Facilities, Homes, and Agencies that Provide Child-Care Services) and promulgate minimum standards that apply to licensed child-care facilities); *see also Atwood*, 176 S.W.3d at 530 (assuming that the Atwoods' claims involved injury and death proximately caused by a use of defective or nondefective tangible personal property, the court found that DPFS retained immunity because it did not have the legal right to control the foster home). In this case, even if DFPS discovered that Shoreline, through its employees, had been violating the DFPS's minimum standards in a manner that posed a risk to the health and safety of the children, it would not have had the authority to force Shoreline to comply; rather, its only recourse would have been to revoke Shoreline's license. *See Atwood*, 176 S.W.3d at 530; *see also* TEX. HUM. RES. CODE ANN. § 42.073 (West Supp. 2010) (providing for relief in the form of emergency suspension and closure of the facility for violation of applicable standards). In addition, Dayne points us to no express language in the Texas Human Resources Code or the Texas Administrative Procedures Act (APA) that provides for a waiver of sovereign immunity based on regulatory control, and we find none. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404-05 (Tex. 1997) (superseded by statute on other grounds) (providing that the state retains immunity from suit unless it has been

expressly waived); *see also Tex. Logos v. Tex. Dep't of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.) ("[A]bsent express statutory authority, the APA does not independently provide a right to a contested case hearing.").

Dayne relies on *City of Denton v. Page* and *Campos* as authority for this argument. *See City of Denton*, 701 S.W.2d 831, 832-35 (Tex. 1986); *Campos*, 162 S.W.3d at 782. In *City of Denton*, the Pages sued the owner of a building and the City of Denton for personal injuries sustained as the result of a fire in the storage building, a fire apparently set by an arsonist. 701 S.W.2d at 833. The Pages' theory, in part, was not that the storage building had a physical defect, but that the building's condition was unsafe because of how it was used for storing gasoline. *Id.* Therefore, the issue identified by the court was "whether the dangerous condition of the storage building is a condition of real property on which Page may base a waiver of the City of Denton's governmental immunity." *See id.* at 834.

The Pages alleged that this dangerous, unsafe condition of the building—how it was used—was a condition of the real property for which the City of Denton was liable. *Id.* at 833. Reversing the trial court and the appellate court, the Texas Supreme Court disagreed, holding that there was no waiver of sovereign immunity for the City of Denton and rendering judgment in its favor. *Id.* at 835. Dayne specifically relies on the supreme court's statement in *City of Denton* that "[i]t is possession and control which generally must be shown as a prerequisite to liability." *Id.* at 836.

Now, on appeal, Dayne attempts to analogize the facts of *City of Denton* to this case and to differentiate the reasoning. He contends that, like *City of Denton*, he did not claim that Shoreline had a physical defect; instead, like *City of Denton*, he claimed that

12

the condition of Shoreline was unsafe and dangerous. Dayne then asserts that, unlike *City of Denton*, he pleaded a relationship of regulatory control by DFPS over Shoreline and its property which reaches liability created in section 101.021(2) of the TTCA. *See id.*

However, *City of Denton* is distinguishable. It did not include any allegations that the City had control of the arsonist involved, and it did not involve assertions that the arsonist who committed the intentional tort was the dangerous condition. *City of Denton* involved allegations regarding the condition of the property itself, e.g., the undiscovered gasoline tanks in the barn which the court concluded were not possessed or controlled by the City of Denton. *Id.* at 835. Unlike *City of Denton*, DFPS was not physically on the Shoreline premises. DFPS did not take physical control or possession of the premises. Moreover, *City of Denton* references the physical condition of the barn and its contents as the dangerous condition. *Id.* Dayne does not complain about Shoreline's physical condition. Rather, he complains only about the intentional torts of Shoreline's employees which he alleges proximately caused harm to M.F.R.D. and for which DFPS should be held liable through its alleged regulatory control. *City of Denton* does not address regulatory control as a theory of recovery. We conclude that *City of Denton* provides no support for Dayne's regulatory-control argument.

In *Campos*, the plaintiffs filed suit against prison guards and Nueces County for alleged sexual harassment and sexual assaults committed by guards. 162 S.W.3d at 782. *Campos*, however, is also distinguishable from this case on multiple grounds.

As an initial matter, it was undisputed that the premises about which the plaintiffs complained in *Campos* was owned and operated by Nueces County, Texas, the

13

governmental unit, and that Nueces County provided that substance abuse treatment facility with equipment and utilities. *Id.* at 785. In this case, it is undisputed that Shoreline, not DFPS, owns the complained-of facility. In addition, in *Campos*, while this Court held that the alleged intentional torts, as well as the negligent hiring, training, and supervision claims against Nueces County, were barred by the TTCA, we also held that the alleged defective condition of the premises could provide a basis for a waiver of sovereign immunity. *Id.* at 786-87. This holding was based on a second, obvious distinction between *Campos* and the present case. In *Campos*, the plaintiffs alleged that the Nueces County premises were defective because certain security cameras were either nonfunctioning or improperly placed, and that various doors, rooms, and enclosures, which permitted guards to have unlimited, unmonitored access to inmates, provided the seclusion necessary for the alleged intentional torts. *Id.* at 785. Dayne's complaints are not about the premises, the facility, or the equipment owned by Shoreline. Instead, Dayne's complaints are about the alleged intentional torts by Shoreline's employees. Thus, we conclude that *Campos* provides no support for this argument.

Based on the above analysis, we conclude that Dayne's control argument does not support his first issue.

### 3. Negligent Acts

To the extent that Dayne's pleadings state claims for negligent hiring, negligent training, and negligent supervision of Shoreline's employees, we conclude that such claims do not bring his lawsuit under the TTCA's waiver of sovereign immunity, in the absence of the use of real or tangible personal property. *See Campos*, 162 S.W.3d at 787-88. "Where the allegation stems from negligent judgment or human error rather

14

than a use or misuse of property, the pleadings fail to satisfy the limited waiver of immunity contained within the [TTCA]." *Atwood*, 176 S.W.3d at 528 (citing *City of Houston v. Rushing*, 7 S.W.3d 909, 915 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (en banc)). "To state a claim under the [TTCA], a plaintiff must allege an injury resulting from the 'condition or use of tangible personal or real property.'" *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001). We have already concluded that Dayne has not done so in this case.

### 4. Failure to Act

Finally, Dayne alleges that DFPS failed to ensure that Shoreline hired professional staff, failed to investigate, and failed to take other actions to eliminate the alleged defective condition or use of the Shoreline Property. The Texas Supreme Court has long held that alleging "failure to do something" is not a waiver of sovereign immunity. *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) ("We have never held that a non-use of property can support a claim under the [TTCA]. Section 101.021, which requires the property's condition or use to cause the injury, does not support this interpretation.").

Moreover, the *Kassen* Court held that not using information in a medical record, such as a "difficult patient file," did not waive sovereign immunity. 887 S.W.2d at 14 (citing *Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 176 (Tex. 1994)). Similarly, the argument in this case appears to be that DFPS was negligent when it failed to use records or information regarding M.F.R.D. or Shoreline's employees because it knew or should have known that Shoreline's employees would allegedly commit an intentional tort against M.F.R.D. These allegations do not describe the use or condition of real property or of tangible personal property and, under *Kassen*, are merely allegations involving

15

information in records that was available but allegedly not used; therefore, none of these allegations result in a waiver of sovereign immunity. *See id.* (citing *Petta*, 44 S.W.3d at 581).

### 5. Private Person

Asserting the following argument, Dayne further contends:

> [B]ased on the quantum of control which [DFPS] had over Shoreline . . . , especially the degree and detail to which it was involved in employee staffing and the substantial and pervasive right of the DFPS to conduct investigations and inspections, DFPS'[s] relationship with Shoreline is that of an employer-employee or principal-agent. That being the case, the DFPS, if it were a private person, would be negligent according to Texas law and liable to Appellants by application of the doctrine of respondeat superior, i.e., making the employer or principal liable for the negligence, etc. of his employee or agent causing injury and damage to a person(s) to whom the employer or principal owed a duty of care, provided that the affected employee or agent was acting in the course of his or her employment at the time of such negligence or wrongful conduct.

However, even if DFPS could be held liable as a private person based on its relationship with Shoreline as Dayne argues, he must still establish that DFPS waived immunity by the condition or use of real property that caused an injury to M.F.R.D. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). Because we have already determined that Dayne has not done so, we reject this argument.

### D. Summary

Having concluded that none of Dayne's arguments support a waiver of sovereign immunity pursuant to the TTCA, we overrule Dayne's first issue.

## III. SEVERANCE

By his second issue, Dayne contends that the trial court abused its discretion in granting DFPS's motion to sever. He argues that the trial court's actions were erroneous

16

because the DFPS's severed cause of action was so interwoven with the remaining claims against the other defendants that it involved identical facts and issues and, thus, should not have been severed. *See Guar. Fed. Sav. v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). Dayne claimed he was harmed because (1) DFPW, the "major actor of control in the overall cause," would be absent from a separate trial with the remaining, unsevered defendants, and (2) any trial of the causes against DFPS at a later date would necessarily involve some if not all of the remaining defendants for evidentiary issues.

## A. Standard of Review and Applicable Law

Texas Rule of Civil Procedure 41 provides that "any claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. A trial court's decision to sever will be reversed only upon a finding of an abuse of discretion. *Guar. Fed. Sav.*, 793 S.W.2d at 658. A severance is proper if: (1) the controversy involves more than one cause of action, (2) the severed cause is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed cause is not so intertwined as to involve identical facts and issues. *Id.* The controlling reasons for severance are to do justice, avoid prejudice, and further the convenience of the parties and the court. *Id.; see also Garrison v. City of Leon Valley*, No. 04-04-00714, 2005 Tex. App. LEXIS 1761, at *12-13 (Tex. App.—San Antonio Mar. 9, 2005, no pet.) (mem. op.) (granting the City's plea to the jurisdiction based on immunity and severing his claims against the City from those claims against the other defendants).

## B. Analysis

An interlocutory order granting a plea to the jurisdiction is immediately appealable.

17

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2008) (providing for an appeal from an interlocutory order granting or denying "a plea to the jurisdiction by a governmental unit").   Such an interlocutory appeal would normally stay all proceedings in the trial court pending resolution of the appeal.   *See id.* § 51.014(b).   Here, however, the trial court was presented with a meritorious plea to the jurisdiction, correctly determining that Dayne's allegations against DFPS had failed to invoke its subject-matter jurisdiction.   Instead of allowing the cause to be stayed pending an interlocutory appeal, the trial court apparently determined that justice and convenience would be furthered by severing Dayne's claims against DFPS from those against the other defendants in the cause.   *See Guar. Fed. Sav.*, 793 S.W.2d at 658; *see also Garrison*, No. 04-04-00714, 2005 Tex. App. LEXIS 1761, at *4.   Under the facts of this case, we cannot conclude that the trial court abused its discretion when it granted DFPS's motion to sever.   We overrule Dayne's second issue.

## IV.   CONCLUSION

Having concluded that Dayne failed to plead facts that would bring his claim under the TTCA and that the trial court did not abuse its discretion in severing Dayne's claims against DFPS from his claims against the remaining defendants, we affirm the trial court's order granting of DFPS's plea to the jurisdiction and its motion to sever.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 20th
day of October, 2011.

18